IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DONALD DAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:08CV631-SRW |
| ) | (WO) |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION**

Plaintiff Donald Davis brings this action pursuant to 42 U.S.C. § 405(g) and §1383(c)(3) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits and supplemental security income under the Social Security Act. The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

**BACKGROUND**

On July 19, 2005, plaintiff filed an application for disability insurance benefits and supplemental security income. On May 24, 2007, after the claim was denied at the initial administrative levels, an ALJ conducted an administrative hearing. The ALJ rendered a decision on June 21, 2007. The ALJ concluded that plaintiff suffered from the severe impairments of a seizure disorder, obesity and hypertension." (R. 19). He found that

plaintiff's impairments, considered in combination, did not meet or equal the severity of any of the impairments in the "listings" and, further, that plaintiff retained the residual functional capacity to perform his past relevant work. Thus, the ALJ determined that the plaintiff was not disabled within the meaning of the Social Security Act. On June 2, 2008, the Appeals Council denied plaintiff's request for review and, accordingly, the decision of the ALJ became the final decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

Plaintiff alleges that he is disabled and unable to work because of the combined effect of his epilepsy, obesity, edema, and hypertension. (R. 68). He filed for disability benefits in July 2005 after his place of employment, Dozier Manufacturing, closed. (R. 69). In August of 2005, upon plaintiff's filing his application for disability, two non-examining agency consultants rendered opinions concerning plaintiff's alleged impairments. (R. 144-152). Peter Bertucci, M.D., completed a Physical Residual Functional Capacity Assessment. Dr. Bertucci indicated that plaintiff is capable of occasionally lifting and carrying fifty pounds and frequently lifting and carrying twenty-five pounds; that he is able to sit, stand and walk six hours in an eight-hour workday; that he has no communicative, manipulative, postural, or visual limitations; and that he should avoid concentrated exposure to extreme heat and hazards such as heights and machinery. (R. 144-152). This assessment is consistent with an exertional level of "medium" work. 20 C.F.R. § 404.1567(c); SSR 83-10. Ellen N. Eno, Ph.D., assessed the record concerning plaintiff's mental status. She concluded that plaintiff's complaints regarding his mental status, including confusion, might be related to medication for seizures or not taking medications as prescribed. She opined that plaintiff's activities of daily living were "pretty good." (R. 152).

The record shows that plaintiff has been receiving medical treatment from Dr. Robert L. Gilliam, M.D., and Carol Morrison, CRNP, at the Dozier Family Health Center in Dozier, Alabama, since January 9, 2003. (See Exhibit 1F). On December 1, 2006, Nurse Morrison completed a Medical Source Statement expressing her medical opinion concerning the effect of plaintiff's depression and seizures on plaintiff's ability to do work related activities.

Nurse Morrison indicated that plaintiff can reasonably lift and/or carry 10 pounds occasionally to 5 pounds frequently; that he can occasionally perform pushing and pulling, bending and stooping, and reaching movements; he can rarely climb stairs or ladders; he is able to frequently perform gross manipulation, such as grasping, twisting, and handling, and fine manipulation with his hands.  Morrison further indicated that plaintiff can sit for five hours and stand or walk for three hours during an 8-hour workday with no need to rest lying down or in a supine position in a bed, couch, or recliner.  (R. 159-160).

Nurse Morrison did believe, however, that plaintiff experiences other limitations that would further reduce his ability to perform many of the activities described above. She indicated that plaintiff experiences moderate pain at times in his lumbosacral area as well as in his legs when swelling occurs. In her opinion, the conditions causing this pain were "seizures and medications," and the pain was demonstrated by the "objective findings" of plaintiff's "sluggishness." Nurse Morrison gave no further description of plaintiff's "sluggishness," but referenced her notes. She listed plaintiff's seizure medication as medication that would adversely affect his ability to work because it caused him "extreme fatigue."  She further stated that these conditions would likely cause plaintiff to be absent from work four days a month.  Nurse Morrison stated that plaintiff had been functioning at the described level for five years.  (R. 159-60).[1]  Dr. Gilliam signed to indicate his approval of Nurse Morrison's assessment.

The ALJ concluded that plaintiff retains the residual functional capacity to perform

---

[1] The limitations expressed by Nurse Morrison are consistent with "light work." Light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b); SSR 83-10.

his past relevant work as a timekeeper and shipping clerk and, thus, that he is not disabled. (R. 25). The ALJ assigned "great weight" to the opinions of Dr. Bertucci and Dr. Eno, but assigned "no weight" to the Medical Source Statement completed by Nurse Morrison. (Id.). Plaintiff challenges the Commissioner's decision, arguing that the ALJ erred by improperly rejecting the opinion of plaintiff's treating sources, Nurse Morrison and Dr. Gilliam. (Plaintiff's brief, p. 7-9). He contends that, if the ALJ had considered the factors set forth in 20 C.F.R. § 404.1527(d), the ALJ would have clearly afforded the opinion of the treating sources some weight.[2] Plaintiff focuses on the length of his relationship with the Dozier Family Health Center as support for assigning the opinion of Nurse Morrison and Dr. Gilliam some weight. (Plaintiff's brief, p. 9).

"If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight." Roth v. Astrue, 249 Fed. Appx. 167, 168 (11th Cir. 2007). However, "[i]f the treating physician's opinion is not entitled to controlling weight, . . . a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." Id. (citing Crawford v. Commissioner, 363 F.3d 1155, 1159 (11th Cir. 2004). "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." Lewis v. Callahan, 125

---

[2] These factors include: (1) examining relationship; (2) treatment relationship, including (i) length of the treatment relationship and the frequency of examination, and (ii) the nature and extent of the treatment relationship ; (3) supportability by objective medical evidence; (4) the opinion's consistency with the record as a while; (5) physician's specialization; and (6) other factors. 20 C.F.R. § 404.1527(d).

F.3d 1436, 1440 (11th Cir. 1991). "Good cause" has been found to exist in the following circumstances: (1) where the physician's opinion "was not bolstered by the evidence"; (2) "where the evidence supported a contrary finding"; or (3) where the physician's opinions "were conclusory or inconsistent with their own medical records." Id.

The ALJ concluded that the Medical Source Statement completed by Nurse Morrison and approved by Dr. Gilliam was inconsistent with, and not supported by, the evidence in the record as a whole. (R. 25). The ALJ articulated his reasons for assigning the Medical Source Statement no weight. He stated that Medical Source Statement was inconsistent with Nurse Morrison's notes, which show "conservative treatment and very few complaints." (R. 25). The Medical Source Statement indicates that depression and seizures are the source of plaintiff's limitations (R. 159); the ALJ reasoned that the objective medical evidence does not support this opinion. The ALJ found that the record shows a history of Nurse Morrison and Dr. Gilliam's rendering conservative medical treatment, which consisted of routine check-ups, medication adjustments and refills. Only four widely-spaced seizures are recorded in the medical and/or administrative record: December 6, 2002, December 10, 2004, August 6, 2005, and July 5, 2007. (R. 77, 124, 185).[3] Nurse Morrison listed plaintiff's seizure disorder as "controlled" or "stable" on various occasions. (R. 109, 117, 188, 193).

---

[3] On a seizure questionnaire, plaintiff listed his three most recent seizures as August 6, 2005, December 10, 2004, and December 4, 2002. (R. 77). However, on September 11, 2003, plaintiff told his nurse practitioner that his last seizure was on December 2, 2002. (R. 124). Contrary to plaintiff's report of a December 10, 2004 seizure, treatment notes for plaintiff's quarterly office visit on December 29, 2004 indicate that plaintiff had experienced "[n]o seizures." (R. 113).

Furthermore, there is little objective medical evidence in the record regarding plaintiff's depression. Mere diagnosis alone is insufficient in determining a claimant's disability; "the claimant must show the effect of the impairment on [his] ability to work. Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005)(unpublished opinion). The medical records contain minimal objective evidence concerning plaintiff's depression or mental state. Nurse Morrison rarely mentions it in her office notes. (R. 120, 184, 188, 193). Additionally, the ALJ found it telling that Dr. Gilliam never referred plaintiff to a mental health professional or consulted a mental health professional while treating plaintiff for his depression. Lastly, plaintiff did not list depression as a cause of his disability on his Disability Report. (R. 68).

The record also does not support Nurse Morrison's opinion that plaintiff suffers from "sluggishness" or "extreme fatigue." Plaintiff's treating sources rarely mentioned fatigue in their office notes. (R. 117, 120). Further, although Nurse Morrison expressed her opinion that plaintiff suffers from moderate pain, the only time she referred to pain in the treatment record was when she noted that plaintiff denied having any pain. (R. 188, 193). Finally, Nurse Morrison's December 2006 Medical Source Statement indicated that plaintiff had been functioning at the described level for five years. (R. 160). Yet, plaintiff was engaged in substantial gainful employment during that time – he did not become unemployed until December of 2004. (R. 69, 84). The ALJ found this fact to be significant and explained that plaintiff could not have engaged in his past relevant work with the limits described in the Medical Source Statement. (R. 25). The reasons articulated by the ALJ for rejecting the

opinions expressed in the Medical Source Statement are adequate and supported by substantial evidence. Accordingly, the ALJ did not err by assigning no weight to the opinion of plaintiff's treating sources.

Plaintiff further argues that the ALJ failed to assess plaintiff's depression properly. Specifically, plaintiff contends that the ALJ erred by finding his depression to be a "non-severe" impairment. (Plaintiff's brief, p. 9). A claimant bears the burden of proving that he has a severe impairment or combination of impairments. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). "[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). Subjective complaints are insufficient to establish a disability. Ogranaja v. Comm'r of Soc. Sec., 186 Fed. Appx. 848, 849 (11th Cir. 2006)(unpublished opinion).

The Commissioner's regulations set out a specific approach that the ALJ is to apply to evaluate a claimant's mental impairments. 20 C.F.R. §§ 404.1520a, 416.920a. The Eleventh Circuit has summarized the ALJ's responsibility as follows:

> [Social Security] regulations require the ALJ to use the "special technique" dictated by the PRTF [Psychiatric Review Technique Form] for evaluating mental impairments. 20 C.F.R. § 404.1520a-(c)(3-4). This technique requires separate evaluations on a four-point scale of how the claimant's mental impairment impacts four functional areas: "activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a-(e)(2).
> \* \* \*
> [W]here a claimant has presented a colorable claim of mental impairment, the social security regulations require the ALJ to complete a PRTF, append it to

8

>the decision, or incorporate its mode of analysis into his findings and conclusions. Failure to do so requires remand.

Moore v. Barnhart, 405 F.3d 1208, 1213-14 (11th Cir. 2005). The Commissioner's regulations state that "[t]he decision must include a specific finding as to the degree of limitation in each of the [four identified] functional areas[.]" 20 C.F.R. § 404.1520a(e)(2).

The ALJ concluded that plaintiff's depression "had failed to exist at a severe level for the duration period." (R. 18). He specifically found that plaintiff's PRTF ratings were "mild for activities of daily living, social functioning, and concentration, persistence, and pace, and none for decompensation." (R. 18). The ALJ explained that the PRTF ratings were supported by Dr. Eno's opinion (see Exhibit 3F), plaintiff's wide range of activities of daily living (see Exhibit 4E), and Nurse Morrison's office notes which do not identify any limitations arising from Mr. Davis's depression, nor "indicate that need for a referral to mental health services." (R. 18).

The ALJ assigned significant weight to findings made by Dr. Eno that plaintiff's depression was not a severe impairment (R. 152). The opinion of a non-examining physician alone does not constitute substantial evidence. Swindle v. Sullivan, 914 F.2d 222, 226 n3 (11th Cir. 1990). However, where the ALJ has discounted the opinion of an examining source properly, the ALJ may rely on the contrary opinions of non-examining sources. See Wainright v. Comm'r of Soc. Sec. Admin., 2007 WL 708971(11th Cir. 2007)(unpublished opinion)(holding that the ALJ properly assigned substantial weight to non-examining sources when he rejected examining psychologist's opinion, clearly articulated his reasons for doing so, and the decision was supported by substantial evidence); Osborn v. Barnhart, 194 Fed.

9

Appx. 654, 667 (11th Cir. 2006)(holding that it was proper for the ALJ to give more weight to the non-examining physician and only minimal weight to the treating physician because the treating physician's opinion was not supported by objective medical evidence).  The record as a whole supports the opinion of Dr. Eno that plaintiff's depression was not a severe impairment (R. 152).  Because Dr. Eno's opinion is supported by and consistent with the record as a whole – unlike the opinion of plaintiff's treating sources – the ALJ properly assigned "great weight" (R. 25) to her opinion in his evaluation of plaintiff's depression.  See Ogranaja, 186 Fed. Appx. at 848 (concluding that because the opinion of the non-examining state agency physicians were supported by and consistent with the record as a whole, substantial evidence supported the ALJ's decision to assign great weight to those opinions).

Plaintiff's daily activities discredit both his testimony and Nurse Morrison's opinion that depression is a disabling factor.  Plaintiff said that he left his home daily, either walking outside to care for his dog or riding with a sibling to run errands. He reported talking on the phone daily with family, as well as visiting with family and friends. (R. 81). Nurse Morrison rarely mentioned plaintiff's depression in her office notes, much less described how the depression functionally limited plaintiff.  (R. 120, 155, 188, 193).  The only objective medical evidence contained in the record concerning plaintiff's depression is the notation that he had a "slightly flat affect" on one occasion (R. 193).  Plaintiff reported that his decreased seizure medication dosage decreased his feelings of depression. (R. 120).  On two different occasions, Nurse Morrison indicated that plaintiff's depression was stable (R. 188, 193), and she continuously described him as "alert and oriented." (See *e.g.*, R. 120, 155, 188, 193).

And, again, the ALJ found persuasive that plaintiff's disability report failed to identify depression as a disabling factor (R. 67-74). The ALJ properly evaluated plaintiff's depression, and substantial evidence supports his conclusion that the depression is a non-severe impairment.

Plaintiff further argues that the ALJ failed to assess properly the impact of plaintiff's obesity on his residual functional capacity ("RFC"). (Plaintiff's brief, p. 9-10). Social Security Ruling 02-1p requires an ALJ to take a claimant's obesity into account when evaluating the claimant's RFC. SSR 02-1p. Further, "[w]here a claimant has alleged several impairments, the Secretary has a duty to consider the impairments in combination and to determine whether the combined impairments render the claimant disabled." Jones v. Dep't of Health & Human Svcs., 941 F.2d 1529, 1533 (11th Cir. 1991). In Hennes v. Commissioner of Social Security Administration, 130 Fed. Appx. 343 (11th Cir. 2005)(unpublished opinion), the Eleventh Circuit explained that, although the ALJ did not specifically address how the plaintiff's obesity affected her RFC, there was no rigid requirement that the ALJ refer to every piece of evidence in his decision. Id. The court affirmed the ALJ's decision, explaining that so long as the ALJ's decision allows the court to conclude that he "considered [plaintiff's] medical condition as a whole, the court can infer that the ALJ considered all of the plaintiff's impairments and symptoms. Id. at 348 (citing Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th 2005)).

In this case, the ALJ concluded that plaintiff's obesity was a severe impairment. While he did not explicitly discuss the impact of plaintiff's obesity on his RFC, he did indicate that

he considered plaintiff's impairments in combination. (R. 20). Further, the ALJ assigned great weight to the Physical Residual Functional Capacity Assessment completed by Dr. Bertucci; Dr. Bertucci specifically considered plaintiff's obesity when formulating his medical opinion. (R. 144-151). The ALJ's decision allows this court to conclude that he considered plaintiff's medical condition as a whole, including his obesity and, accordingly, his failure to reference the effects of plaintiff's obesity on the RFC determination explicitly does not constitute reversible error.

The ALJ concluded that plaintiff failed to produce sufficient evidence to establish a disabling seizure disorder according to the requirements set forth in SSR 87-6[4] (R. 24), referencing plaintiff's "strong history of non-compliance." (See R. 19, 24, 26-27, 29, 31-35). Plaintiff argues that the ALJ erred by failing to consider his valid reasons for noncompliance with his prescribed seizure medication. (Plaintiff's brief, p. 11). Although plaintiff testified to side effects caused by his medication, the record does not show that he reported persistent side effects to his treating practitioner, or that he asked to try a different medication to control his seizures. On the one occasion in the medical record on which plaintiff complained of side effects of Dilantin, the note indicated that he "does not really want to change to a different medication[.]" (R. 120).

Additionally, the ALJ did not base his denial of benefits solely on plaintiff's non-compliance. Rather, he considered plaintiff's noncompliance as but one factor in weighing the credibility of his subjective complaints, and concluded that the objective medical

---

[4] SSR 87-6 sets forth the Commissioner's policy regarding "The Role of Prescribed Treatment in the Evaluation of Epilepsy."

evidence did not support plaintiff's complaints concerning his epilepsy. See Ellison v. Barnhart, 355 F.3d 1272, 1275 (11th Cir. 2003)(finding no error in ALJ's consideration of noncompliance as a factor in assessing his credibility, where the plaintiff had argued that the ALJ had failed to consider the effect of his financial condition on his ability to obtain treatment for his seizures, because the ALJ did not rely primarily on noncompliance but relied on other evidence relevant to credibility). The regulations state that the ALJ will "consider all of the evidence presented" when evaluating the intensity and persistence of a claimant's subjective testimony concerning impairments. 20 C.F.R. §§ 404.1529(c)(3), 416.929. The ALJ properly considered plaintiff's noncompliance as a factor for discrediting his complaints concerning his epilepsy.[5]

## CONCLUSION

Upon review of the record as a whole, the court concludes that the decision of the Commissioner is supported by substantial evidence and proper application of the law. Accordingly, this decision is due to be affirmed. A separate judgment will be entered.

Done, this 31th day of March, 2010.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE

---

[5] In this case, the ALJ found that plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not "entirely credible." (R. 24). He explained that "it was noteworthy that [plaintiff] has not produced persuasive evidence of muscle atrophy, reduced joint motion, muscle spasm, or sensory and motor disruption that have been present at a disabling level for the duration period." (R. 19). The ALJ also found that plaintiff's daily activities – which include cooking, shopping, caring for his personal needs, reading books, riding in vehicle with others, visiting family, walking, and accepting visitors – did not suggest that he was disabled. (Id.; Exhibit 4E). The ALJ's credibility determination is supported by substantial evidence.